1  **WO**                                                              JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Richard Blaisdell, | ) | No. CV 08-0779-PHX-JAT (ECV) |
|---|---|---|
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Rodrigues, et al., | ) | |
| Defendants. | ) | |

Plaintiff Richard Blaisdell, who is confined in the Saguaro Correctional Center (SCC), a Corrections Corporation of America (CCA) facility in Eloy, Arizona,[1] brought this civil rights action under 42 U.S.C. § 1983 against various SCC officials (Doc. #23). Before the Court is Defendants' Motion for Summary Judgment (Doc. #44), which is fully briefed (Doc. ##48, 50, 52). Also before the Court are Defendants' Motion to Strike (Doc. #57) and Plaintiff's Motion for the Court to Consider his Reply Memorandum (Doc. #58).

**I.  Background**

Plaintiff commenced this action in state court in February 2008, and in March, before service of the Complaint, he filed a First Amended Complaint (Doc. #1).[2] The following month, Defendants removed the action to the federal court (id.). The Court screened the amended pleading, and it was dismissed for failure to state a claim (Doc. #19).

---

[1] Plaintiff is in custody of CCA pursuant to a contract with the State of Hawaii.

[2] See Pinal County Superior Court Civil No. CV 2008-00423 (Doc. #1, Ex. C).

| | |
|---|---|
| 1 | In July 2008, Plaintiff submitted his Second Amended Complaint, which named as Defendants SCC Health Services Administrator Cristi Rodrigues and SCC Assistant Wardens Ben Griego and Jody Bradley (Doc. #23).[3] Two of Plaintiff's claims relate to the use of a wheelchair (id. at 3). Plaintiff alleged that he was first authorized to use a wheelchair in 2001 by a prison physician at CCA's Florence facility (Doc. #12 at 2). At that time, Plaintiff weighed over 400 lbs., was diabetic, had edema, breathing difficulties, and high blood pressure (Doc. #16 at 1, 6). The wheelchair enabled Plaintiff to exercise his legs without putting his full weight on his arthritic knees, which caused severe pain (id. at 2, 6). Consequently, his health improved; he lost 100 lbs., is no longer diabetic, and discontinued all prescription medications (id.). |

In Count I of his Second Amended Complaint, Plaintiff alleged that Rodrigues was deliberately indifferent to Plaintiff's serious medical needs when she failed to provide him a large wheelchair for three months despite his repeated requests for one due to severe pain caused by the use of a wheelchair that was too small (Doc. #23 at 3). In Count II, Plaintiff alleged that immediately after they were served with this lawsuit in late January 2008, Griego and Bradley issued orders prohibiting other inmates from assisting Plaintiff by, for example, pushing him in his wheelchair to the mess hall or religious meetings. Plaintiff claimed that there was no legitimate penological reason for Griego's and Bradley's conduct; rather, it was in retaliation for Plaintiff seeking legal redress. And in Count IV, Plaintiff alleged that Griego and Bradley confiscated his personal property in retaliation for filing lawsuits against them and without a legitimate penological reason (id.).[4] Plaintiff requested compensatory, punitive, and injunctive relief (id.).

Defendants filed their Answer (Doc. #25), and the Court issued a Scheduling Order (Doc. #26).

---

[3] Upon screening, the Court dismissed CCA as a Defendant (Doc. #24).

[4] The Court dismissed Count III (access to the courts) and Count IV in part (deprivation of property) (Doc. #24).

- 2 -

1    In December 2008, Plaintiff filed a motion seeking injunctive relief, including the
2    return of his wheelchair, which was not returned to him after he was released from
3    segregation the previous month (Doc. #28). Although the Court found that Plaintiff's
4    allegations raised some serious questions, it determined that at that stage of the litigation,
5    Plaintiff had not demonstrated a likelihood of success on the merits or the likelihood of
6    irreparable injury so as to warrant an injunction (Doc. #38).
7    Defendants then filed their summary judgment motion (Doc. #44).

**II.    Motion for Summary Judgment**

    **A.    Defendants' Contentions**

Defendants seek summary judgment on the following grounds: (1) Plaintiff's medical claim is moot because the Court has already held that he is not entitled to a wheelchair; (2) Plaintiff's allegations fail to rise to an Eighth Amendment deliberate indifference claim; and (3) Plaintiff fails to state a claim for retaliation regarding inmate assistance and his property (id.).

With respect to Plaintiff's medical care claim, Defendants rely on the Court's previous Order that denied Plaintiff's preliminary injunction motion requesting a wheelchair (id. at 4). Defendants submit that according to that Order, Plaintiff's allegations demonstrate a difference of medical opinion and are therefore insufficient to support an Eighth Amendment claim (id.). Defendants also submit that there was no deliberate indifference to Plaintiff's medical needs; rather, medical staff has evaluated Plaintiff and determined that a wheelchair is unnecessary and would negatively impact his health (id. at 5-6). Defendants explain that despite this conclusion by medical personnel, Plaintiff has been allowed limited use of his wheelchair pending his continued physical improvement (id. at 6). For this reason, Defendants argue that Plaintiff's claim is moot.

Defendants further argue that all decisions regarding Plaintiff's ambulation, such as whether to allow other inmates to assist Plaintiff, are based on his medical condition and not as a form of retaliation (id. at 7). Defendants nonetheless maintain that inmates are permitted

to assist Plaintiff where practicable, and, as stated, Plaintiff's wheelchair was returned to him on a conditional basis (id.). Defendants note that Plaintiff is encouraged to operate his wheelchair on his own and as needed as a source of exercise, which Plaintiff claims is the main purpose for the wheelchair (id. at 7-8). Defendants contend that the record demonstrates that they have continually tried to work with Plaintiff to improve his physical condition and there is no evidence of retaliation (id. at 8).

As to Plaintiff's retaliation claim related to property, Defendants assert that Plaintiff fails to allege facts showing that any decisions about his property could constitute retaliation against him for filing lawsuits (id. at 8). They submit there is no evidence of a link between Defendants' conduct and his filing of lawsuits (id.). Defendants further submit that all of Plaintiff's allowable property has been return to him (id.). They explain that the audio tapes that Plaintiff seeks contain recorded interviews with young girls that Plaintiff was convicted of sexually abusing and therefore are not appropriate for Plaintiff to keep to in his possession (id.). And Defendants point out that the audio tapes are recordable audio cassettes, which are not allowable property (id. at 10). Defendants explain that Griego has set up an agreement with Plaintiff that allows him library time to listen to the tapes for the purpose of working on his habeas petition, and Plaintiff has been offered the option to pay for the tapes to be transcribed (id.).

In support of their motion, Defendants submit a separate Statement of Facts (Doc. #45), to which they attach the affidavits of Griego (id., Ex. A), Muhammad Haleem, an SCC physician (id., Ex. B), and Richard Streeter, SCC property officer (id., Ex. C).

**B.     Plaintiff's Response**

Plaintiff immediately filed a response opposing Defendants' motion (Doc. #48). The Court then issued an Order with the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion (Doc. #49). This Order permitted Plaintiff to file an amended response to the summary judgment motion, which he did (Doc. #50).

In his opposition briefs, Plaintiff contends that his claims amount to Eighth Amendment violations, they are not moot, and there exist several genuine issues of material fact precluding summary judgment (Doc. #48 at 1-2 ¶¶ 1, 8). He notes that the Court has already held that he adequately stated claims in Count I, II and IV (id. at 1 ¶ 2). And he specifies that the denial of an adequate wheelchair occurred between November 6, 2007 and February 8, 2008 (id. at 1). In his declaration, which is attached to his amended response, Plaintiff avers that Dr. Phan prescribed him a wheelchair but Rodrigues failed to comply with that order and provide him a large wheelchair for three months, which caused severe injuries to Plaintiff's legs as well as mental anguish (Doc. #50, Pl. Decl. ¶ 7). He further avers that the small, narrow wheelchair he was forced to use caused large dents in his thighs, and left him unable to sleep (id. ¶ 14). Plaintiff asserts that Dr. Haleem was not involved with Plaintiff's care at the relevant time; Haleem did not see Plaintiff until May 28, 2008, when he asked to see Plaintiff solely for the purpose of supporting Defendants' case (id. ¶ 8; Doc. #48 at 1). Plaintiff submits that the medical deprivations took place long before Haleem arrived at SCC; therefore, Haleem's statements and opinion are irrelevant (Doc. #48 at 5 ¶ 21).

Plaintiff confirms that his use of a wheelchair was restored in March 2009; he submits that this occurred only after an attorney wrote a letter on his behalf (id. at 3-4 ¶¶ 10, 16). And Plaintiff confirms that his health has continued to improve since that time (id. at 3 ¶ 10).

Plaintiff maintains that contrary to Defendants' claim, other inmates were forbidden from assisting Plaintiff in his wheelchair (id. at 4 ¶ 17). In support, he proffers the declaration of Larry Ortiz, an SCC inmate who states that he was helping Plaintiff but then he was told by SCC official Betrus not to help push Plaintiff, and that if he was caught doing so again, he would be issued a disciplinary violation (id., Attach.). Plaintiff also submits copies of his requests asking the medical unit to issue a memorandum allowing inmates to assist him and copies of the responses denying that request (id., Attachs.). Plaintiff asserts that now, "all of a sudden," the warden is allowing inmates to assist him; however, from

1  January 2008 through March 2009, no inmates were allowed to push Plaintiff (id. at 6 ¶ 23).

2  Plaintiff disputes Defendants' contentions that the audio cassettes are not allowable under policy; he states that the property list allows each inmate to have 25 cassette tapes (id. at 3 ¶ 12). And he asserts that there is nothing in the policy about recordable tapes (Doc. #50 at 1 ¶ 3). Plaintiff states that he purchased the audio tapes from the prosecutor in his criminal case and he has a legal right to possess them; he explains that he has had these tapes in his possession for the last seven years (id. at 4 ¶ 3). Plaintiff argues that there is no legitimate penological reason to be denied possession of these tapes, which contain evidence of prosecutorial misconduct (Doc. #48 at 3 ¶ 13). He further argues that a few hours per week with the tapes in the library is insufficient for his need to work on his legal case (id. at 3-4 ¶ 15). Plaintiff adds that other personal property was taken but never returned to him; specifically, his fan and various commissary items that were purchased the day before he was placed in segregation (id. at 5 ¶ 20).

### C. Defendants' Reply

Defendants reply that there is no evidence that Plaintiff possessed a prescription for a wheelchair, even though he was permitted to use one when he arrived at SCC (Doc. #52 at 3). They argue that because Plaintiff's use of a wheelchair has never been medically necessary, Plaintiff cannot demonstrate that he had a serious medical need requiring a wheelchair, nor can the circumstances surrounding the use of a wheelchair rise to a violation of the Eighth Amendment (id.). Defendants also argue that Haleem's testimony is relevant because his evaluation of Plaintiff revealed that Plaintiff did not need a wheelchair and that his continued use of a wheelchair was potentially harmful to Plaintiff's health (id.). Defendants challenge Plaintiff's claim that a wheelchair was provided to him following a letter written by an attorney; they note that the "alleged letter" is not attached and Plaintiff makes only a conclusory allegation that the letter affected Haleem's medical decision to restore the wheelchair (id. at 4). Defendants explain that after Plaintiff submitted inmate requests, Haleem reevaluated Plaintiff's need for a wheelchair and allowed him limited use;

however, he encouraged Plaintiff to use a cane and explained that use of the wheelchair may lead to physical deterioration (id. at 4).

Defendants insist that contrary to Plaintiff's claims, other inmates are permitted to assist Plaintiff where practical in the prison setting (id. at 5). Defendants nonetheless argue that even if Plaintiff's claims are taken as true, he cannot show a connection between the Defendants' alleged conduct in preventing inmates from assisting Plaintiff and the filing of his lawsuit because all decisions regarding Plaintiff's health are based on medical staff recommendations (id. at 5-6). And Defendants note that there is no evidence that there exists a medical need for Plaintiff to receive assistance from another inmate (id. at 6).

Finally, as to the property-retaliation claim, Defendants reassert that there are legitimate penological reasons to disallow Plaintiff from possessing the subject audio tapes, including safety and security of the facility (id.). Defendants contend that the parties' dispute over whether the tapes are, in fact, recordable, is not material (id. at 7-8). They also reargue that Griego has offered Plaintiff alternatives, and the option of listening to the tapes while in the library is not unreasonable (id. at 8). Defendants conclude that there is no evidence that the decision regarding the audio tapes was retaliation for filing lawsuits; thus, summary judgment should be granted (id. at 9).

With their reply, Defendants submit a supplemental Statement of Facts, which adds 30 more paragraphs to the 24 paragraphs set forth in their original Statement of Facts (Doc. #53). Defendants attach additional evidence to their supplemental Statement of Facts, including a copy of Plaintiff's commissary records (id., Ex. D(a)); a copy of the SCC Inmate Property Policy and Inmate Handbook (id., Exs. D(b) and (c)); the affidavit of Nurse Patti Sell, SCC Health Service Administrator, with attached 2009 medical records (id., Ex. E); and the affidavit of Traci Thompson, SCC Administrative Secretary (id., Ex. F).

Defendants also file an Objection to Plaintiff's Statement of Facts, in which they argue that Plaintiff's response does not comply with the Federal and Local Rules of Procedure, and they object to numerous statements by Plaintiff as unsupported and

conclusory (Doc. #54).

**D.      Plaintiff's Response to Defendants' Supplemental Statement of Facts**

Plaintiff submits a Statement of Facts in response to Defendants' supplemental Statement of Facts, and he identifies numerous factual disputes (Doc. #56). He repeats his objections to Haleem's treatment and opinion of Plaintiff's medical condition months after the time relevant to this lawsuit (id. at 1-2 ¶¶ 10-18). Plaintiff also disputes many of Defendants' factual statements regarding the SCC policy addressing inmate property and lost-property claims (id. at 3-4 ¶¶ 28-47). Plaintiff attaches a copy of a February 6, 2009 letter from attorney Daphne E. Barbee directed to the Deputy Director for Corrections (id., Ex. A). This letter indicates that Barbee was following-up on her testimony before Congress regarding complaints from SCC inmates, and that she was informed that Plaintiff's wheelchair was taken away, which could constitute a violation of the Americans with Disability Act and the Rehabilitation Act because SCC receives federal funds (id.).

**E.      Defendants' Motion to Strike**

Defendants move to strike Plaintiff's supplemental Statement of Facts on the grounds that the Local Rules of Procedure do not authorize a sur-reply, the Court did not grant leave to file a sur-reply, and many of the statements lack foundation and are inadmissible (Doc. #57).

Plaintiff responded to Defendants' motion by filing a motion asking the Court to construe his sur-reply as a reply memorandum (Doc. #58). Plaintiff states that he believed that he was properly responding to Defendants' Supplemental Statement of Facts because the Court's Rand Order directed that he must respond to all motions (id. at 2 ¶¶ 3-4, 7). Plaintiff further requests that to the extent that his filings may be deficient, the Court accept them due to his pro se status (id. at 1-2 ¶¶ 1-2, 10).

**III.    Summary Judgment Standard**

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

**IV. Analysis**

    **A. Procedural Motions**

Although Plaintiff was not granted leave to file what amounts to a sur-reply, he understandably felt obligated to respond to Defendants' reply memorandum, which improperly presented new facts and evidence (Doc. #53). See Schwartz v. Upper Deck Co.,

183 F.R.D. 672, 682 (S.D. Cal. 1999) ("[i]t is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper"). In light of Plaintiff's *pro se* status and Defendants' presentation of new facts and evidence, the Court will deny Defendants' Motion to Strike. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (the district court should not consider new evidence presented in a reply to a summary judgment motion without giving the nonmovant an opportunity to respond); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Thus, Plaintiff's sur-reply will be considered by the Court, and Plaintiff's motion requesting that his filing be construed as a reply memorandum will be granted.

### B. Medical Care

Plaintiff's claim in Count I is that Rodrigues was deliberately indifferent to Plaintiff's serious medical needs when she failed to provide a large wheelchair to Plaintiff for a period of three months (Doc. #23 at 3).

#### 1. Legal Standard

To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted).

A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an

individual's daily activities, or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60.

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)).

"[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). Therefore, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**2. Analysis**

***a. Serious Medical Need***

The first prong in the deliberate-indifference analysis examines whether Plaintiff's need for a wheelchair from November 6, 2007 through February 8, 2008—the period during which he was denied a large wheelchair—constituted a serious medical need. Plaintiff avers that he has always been severely obese and suffers acute arthritis (Doc. #50, Pl. Decl. ¶ 2).

He also avers that the lack of a proper wheelchair for three months caused him to suffer severe pain and sleepless nights due to the pain, and he incurred large dents in his thighs from the small wheelchair he was forced to use during that time (id. ¶ 14).

Defendants argue that Plaintiff cannot demonstrate that he suffered a serious medical need requiring a wheelchair, and they note that there is no evidence that Plaintiff held a prescription for a wheelchair when he arrived at SCC in 2007 (Doc. #52 at 3). Defendants also rely on the Court's prior Order, which denied Plaintiff's request for injunctive relief, to argue that Plaintiff's claim is moot (Doc. #44 at 3-4).

The Court's prior Order denying injunctive relief is not dispositive on the deliberate indifference claim because the preliminary injunction motion related to Plaintiff's condition in late 2008—a year after his deliberate indifference claim arose. Plaintiff's inability to meet his burden for an injunction for a wheelchair in December 2008 is not evidence of his condition or need for a large wheelchair at the time relevant to his claim—November 2007-February 2008 (see Doc. #28).

Neither party has submitted medical records either from the period prior to November 2007 or during the three months Plaintiff was denied a large wheelchair. The Court notes that Plaintiff previously alleged that he was first authorized to use a wheelchair in 2001 by a prison physician in Florence (Doc. #16 at 1-2). And Defendants do not dispute that Plaintiff was authorized for a wheelchair in the past (Doc. #52 at 3; see Doc. #29, Ex. A, Griego Aff. ¶ 36). As stated, a serious medical need includes the "presence of a medical condition that significantly affects an individual's daily activities" and the existence of chronic pain. McGuckin, 974 F.2d at 1060. Plaintiff's sworn statements regarding the pain he endured for the three months without a large wheelchair and the effect it had on his daily life are sufficient to raise a genuine question of material fact whether he had a serious medical need requiring the use of large wheelchair.

### b. Deliberate Indifference

Next, the Court turns to whether Rodrigues' response to Plaintiff's serious medical

- 12 -

need was deliberately indifferent. See Jett, 439 F.3d at 1096. Defendants' argument on this prong rests primarily on their contention that Plaintiff was not entitled to a wheelchair of any size; in other words, that there was no serious medical need (see Doc. #44 at 5; Doc. #52 at 3). The Court has already determined that there exists a material factual dispute on that issue.

Defendants' otherwise contend that Plaintiff's claim simply amounts to a difference of opinion with the prison facility medical staff as to whether he required a wheelchair, and that this disagreement is insufficient to support a deliberate indifference claim (Doc. #44 at 5-6). But, as articulated above, Defendants present no evidence related to Plaintiff's medical condition at the relevant time. Haleem's affidavit reflects his medical opinion of Plaintiff's condition as of his first examination of Plaintiff on May 28, 2008 (Doc. #45, Ex. B, Haleem Aff. ¶¶ 1, 3). Haleem attested that he recommended a course of treatment consisting of medications and exercise, and he opined that continued use of a wheelchair would negatively effect Plaintiff's ability to ambulate; therefore, he denied the wheelchair request (id. ¶¶ 5, 8-11). But Haleem offered no medical opinion about Plaintiff's condition prior to that appointment or as to whether a wheelchair would have been medically appropriate previously. Consequently, there is no medical opinion supporting the denial of a wheelchair from November 2007-February 2008 with which to disagree.

Defendants final argument is that they have now allowed Plaintiff conditional use of an appropriately sized wheelchair (Doc. #44 at 6). Plaintiff confirms that Defendants restored the use of a wheelchair in March 2009 (Doc. #48 at 4 ¶ 16). Based on this evidence, Plaintiff's claim for injunctive relief in Count I is moot.

With respect to Plaintiff's damages claim, given the lack of medical evidence of Plaintiff's condition during the three months he was denied an appropriate wheelchair in 2007-2008, there remains a material factual dispute whether Rodrigues was deliberately indifferent to Plaintiff's serious medical need. Notably, although Plaintiff alleged that Rodrigues failed to provide him a large wheelchair during the relevant time period even after

- 13 -

several requests and grievances were submitted (Doc. #23 at 3), in the summary judgment briefing, he did not present more specific facts regarding Rodrigues' role in the alleged deprivation. But Defendants did not raise any liability argument in their motion; therefore, the Court may not address the issue. See Greene v. Solano County Jail, 513 F.3d 982, 990 (9th Cir. 2008) (stating that if a claim is not raised in a defendant's motion, summary judgment based on that claim is inappropriate).

In sum, there remain material factual disputes on Plaintiff's deliberate indifference claim in Count I. Defendants' request for summary judgment will be granted only as to Plaintiff's request for injunctive relief; it is otherwise denied.

### C. Retaliation

In Counts II and IV, Plaintiff claims that Griego and Bradley retaliated against him for filing this lawsuit and for exercising his free speech (Doc. #23 at 4, 5-A).

#### 1. Legal Standard

Prisoners have a constitutionally-protected right to file grievances and to pursue civil rights litigation without fear of retaliation. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).

To state a claim based upon retaliation, a prisoner must allege that (1) he was engaged in protected activity, (2) prison officials impermissibly infringed on his right to engage in the protected activity, i.e., they acted in a retaliatory manner, and (3) prison officials' retaliatory action served no legitimate penological interest. See Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985). The Ninth Circuit has emphasized that to state a cause of action based upon retaliation, a prisoner "must do more than allege retaliation . . . he must also allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Id. Thus, to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to defendants' actions. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Retaliation claims must be evaluated in light of concerns over judicial involvement in day-to-day prison management. Id. at 807 (citing Sandin v. Conner, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin, 515 U.S. at 482).

### 2. Analysis

The Court first examines the activity Plaintiff was engaged in and whether it constituted protected activity. Rizzo, 778 F.2d at 531. Plaintiff alleges that the activity at issue was the filing of a federal lawsuit against SCC officials (Doc. #23 at 4, 5B). This activity is protected by the First Amendment. See id.; see also Rhodes, 408 F.3d at 567; Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995).

Next, the Court must assess whether Griego and Bradley infringed on Plaintiff's right to file lawsuits by acting in a retaliatory manner. Rizzo, 778 F.2d at 531. Plaintiff alleges that immediately following service of his January 29, 2008 Complaint on CCA and SCC, Griego and Bradley issued orders to prevent any inmates from assisting Plaintiff in his wheelchair or an any other manner (Doc. #23 at 4).[5] Plaintiff also alleges that upon his release from segregation in June 2008, Griego and Bradley refused to return much of Plaintiff's personal property, including legal materials related to his habeas action (id. at 5-A, 5-B).

#### *a. Order Preventing Assistance*

Defendants submit that all decisions related to Plaintiff's ambulation and wheelchair usage were based on Plaintiff's medical condition (Doc. #44 at 7). They assert that there was no medical need for a wheelchair; thus, Plaintiff was "certainly not entitled to have other

---

[5]Plaintiff's original Complaint was stamped as received by the Pima Superior Court on February 8, 2008 (Doc. #1). But his Complaint was signed and dated January 29, 2008; under the prison mailbox rule, the date a prisoner signs the pleading and hands it to officials for mailing is considered the filing date. Houston v. Lack, 487 U.S. 266, 270-71 (1988).

inmates push him in a wheelchair" (id.). Defendants also argue that Plaintiff's allegations are false (id.). In his affidavit, Griego denies that he issued an order to prevent inmates from assisting Plaintiff, and he states that "to this day" fellow inmates are allowed to assist Plaintiff (id.).

In response, Plaintiff reiterates that immediately after he served his Complaint, other inmates were directed to cease assisting him; specifically, Correctional Officers Puli and Casper, Captain Olsen, and Unit Manager Betrus were told to write-up any inmate that helped push Plaintiff in his wheelchair (Doc. #48 at 4; Doc. #50 at 4). Plaintiff submits the declaration of Larry Ortiz, a fellow inmate, who avers that in the last part of January 2008, he was attempting to help Plaintiff—as he had in the past—to push his wheelchair to the chow hall when he was told by Betrus that neither he nor any other inmate was allowed to help push Plaintiff (Doc. #48, Attach. Ortiz Decl. ¶ 2). Ortiz further avers that Betrus told him that if he was caught assisting Plaintiff, he would be issued a disciplinary report for "failing to obey," which is a major violation (id.). Ortiz explains that this prohibition against helping Plaintiff started around January 28 or 29, 2008, and continued until April, when Plaintiff was sent to segregation (id. ¶ 5). Ortiz states that he observed Plaintiff struggle many times as he tried to go up the ramp to the chow hall and that Plaintiff was barely able to get up the ramp on his own (id.). According to Ortiz, inmates were permitted to assist Plaintiff beginning in early March 2009, when Plaintiff finally got his wheelchair back from medical (id. ¶ 7).

Plaintiff also proffers copies of Inmate Request Forms dated February 8 and 11 and April 5, 2008 (id., Exs. A and B). The forms reflect that on February 1 Plaintiff began requesting a memorandum authorizing inmates to assist Plaintiff in his wheelchair; these requests explain that for months inmates had been permitted to assist him but as soon as he filed his Complaint, inmates were prevented from helping him (id., Ex. D). He explained that he has a very hard time getting of the ramp to the dining room (id., Ex. A). The responses informed Plaintiff that the "only legal way" for inmates to assist Plaintiff in his wheelchair

- 16 -

is with a "medical duty status" authorization, and that is not medically necessary for someone to push Plaintiff (id., Ex. A-D, responses).

Based on this record, there is a question of fact whether Defendants' actions were retaliatory. Although the parties dispute whether inmates were actually prohibited from assisting Plaintiff after he filed his lawsuit, the Court must view the evidence in Plaintiff's favor on Defendants' summary judgment motion. Here, Plaintiff presents evidence that as soon as he filed his lawsuit, inmates were told not to assist Plaintiff or they would face disciplinary sanctions (Doc. #48). This timing of the alleged retaliatory conduct constitutes circumstantial evidence of retaliatory intent. Pratt, 65 F.3d at 808.

In addition, Defendants present no argument or evidence that they were unaware of Plaintiff's lawsuit. And the arguments they do present are unavailing. The protected activity at issue is the filing of a lawsuit; not, as Defendants suggest, the assistance of other inmates. Thus, that there is no constitutional right to the assistance of other inmates is immaterial to the retaliation claim (see Doc. #52 at 5-6). Defendants maintain that there was no medical need for assistance (id. at 6); however, there is no evidence of Plaintiff's medical condition at that time. Defendants' own evidence shows that Haleem did not see Plaintiff until May 28, 2008—four months after the alleged retaliatory conduct (Doc. #45, Ex. B, Haleem Aff. ¶ 3).

The final inquiry in the retaliation analysis is whether Defendants' alleged retaliatory conduct served a legitimate penological interest. See Rizzo, 778 F.2d at 532. Plaintiff alleges that it did not (Doc. #23 at 4). Defendants submit that inmate-on-inmate assistance is not always appropriate in a prison setting because it can threaten the safety and security of staff and prisoners; however, they do not explain how security is threatened (Doc. #52 at 5). And the fact that inmates are now "permitted to assist Plaintiff in maneuvering his wheelchair throughout the facility" undercuts the general argument that such assistance can threaten security (Doc. #45, Ex. A, Griego Aff. ¶ 15).

As with the claim in Count I, Defendants present no argument or evidence going to

Griego's and Bradley's liability. Thus, there remains a material factual dispute whether these two Defendants retaliated against Plaintiff for filing a lawsuit by prohibiting inmates from assisting Plaintiff in his wheelchair. Defendants' request for summary judgment on Count II will denied.

### b. *Confiscation of Property*

Defendants contend that there is no connection between the filing of Plaintiff's lawsuit and his property claim (Doc. #44 at 10). They maintain that upon his release from segregation in June 2008, all of Plaintiff's allowable property except audiotapes was returned to him (id. at 9). They assert that the withholding of the audiotapes was not retaliatory; rather, it was because it was inappropriate for Plaintiff to have access to recordings of his young victims, particularly when he could have shared the recordings with other convicted sex offenders (id. at 9). They further assert that listening to these tapes could hinder rehabilitation efforts (id.). Defendants argue that despite these concerns related to the audiotapes, Plaintiff is permitted to have access to the tapes in the library when he works on his habeas petition (id. at 10).

Unlike the claim in Count II, here, the alleged retaliatory conduct did not occur until months after Plaintiff filed his lawsuit. Therefore, the timing of the conduct does not support an inference of retaliatory intent. See Pratt, 65 F.3d at 808.

The parties dispute whether Plaintiff's fan and some commissary items were returned to him after his release from segregation. Defendants submit evidence that pursuant to policy, all of a prisoner's food items are disposed of when the prisoner is transferred to segregation (Doc. #52, Ex. D, Streeter Aff. ¶ 9). Plaintiff's disagreement with this policy is insufficient to support his retaliation claim. As to the fan, the parties dispute whether Plaintiff submitted a property claim as provided for under the SCC's property claims process (Doc. #53 48; Doc. #56 at 4 ¶ 48). Plaintiff's allegations, however, are more representative of a negligence claim for lost property than a retaliation claim.

Finally, the Court finds that Defendants present evidence that confiscation of

Plaintiff's audiotapes served a legitimate penological purpose. Also, Plaintiff does not dispute that he has been given the options to listen to the tapes in the library or pay to have them transcribed (see Doc. #50 at 1 ¶ 6; Doc. #56 at 1 ¶ 6). Thus, his ability to access the tapes is only limited for penological reasons, and therefore does not infringe on his right of access to the courts.

For these reasons, summary judgment will be granted to Griego and Bradley on Count IV.

## V. Conclusion

The Court finds that summary judgment is appropriate on Count IV and on Plaintiff's claim for injunctive relief with respect to Count I. Disputed issues of fact remain on the non-injunctive portion of Court I and on Count II.

**IT IS ORDERED:**

(1) The reference is **withdrawn** from the Magistrate Judge as to Defendants' Motion for Summary Judgment (Doc. #44) and Motion to Strike (Doc. #57), and Plaintiff's Motion for Court to Consider his Reply Memorandum (Doc. #58).

(2) Plaintiff's Motion for the Court to Consider his Reply Memorandum (Doc. #58) is **granted**.

(3) Defendants' Motion to Strike (Doc. #57) is **denied**.

(4) Defendants' Motion for Summary Judgment (Doc. #44) is **granted in part** and **denied in part** as follows:

    (a) the motion is **granted** as to Plaintiff's claim for injunctive relief in Count I;

    (b) the motion is **granted** as to Count IV;

    ( c) the motion is otherwise **denied**.

DATED this 5th day of March, 2010.

James A. Teilborg
United States District Judge